IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AARON ALEXIS LOPEZ,<br>    Plaintiff, | §<br>§<br>§ |
| VS. | § CIVIL ACTION NO. 4:11-CV-00343-Y |
| | § |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>    Defendant. | §<br>§<br>§ |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I.   STATEMENT OF THE CASE

Plaintiff Aaron Alexis Lopez ("Lopez") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for supplemental security income ("SSI") under Title II of the Social Security Act ("SSA"). Lopez applied for SSI on November 30, 2007, alleging that his disability began on September 1, 2007. (Tr. 10.)

After his application for SSI was denied initially and on reconsideration, Lopez requested a hearing before an administrative law judge ("ALJ"). (Tr. 54.) The ALJ held a hearing on March 19, 2009, and issued an unfavorable decision on May 7, 2009. (Tr. 7–20.) On June 23, 2009, the Appeals Council denied Lopez's request for review, leaving the ALJ's decision as the final decision of the Commissioner in his case. (Tr. 1.)

## II. STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA and numerous regulatory provisions. *See* 20 C.F.R. Pt. 416 (2012). The SSA defines a "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in "any substantial gainful activity." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 416.920(b). "Substantial gainful activity" is defined as work activity "that involves doing significant physical or mental activities . . . for pay or profit." 20 C.F.R. § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment contained in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. 20 C.F.R. § 416.920(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 416.920(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).

Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant can still do notwithstanding his physical and mental limitations. 20 C.F.R. § 416.920(a)(4). The

claimant's RFC is used at both the fourth and fifth steps of the sequential analysis. *Id.* At step four, the claimant's RFC is used to determine if the claimant can still do his past relevant work. *Id.* § 416.920(e). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other work. *Id.* At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

Lopez presents the following issues:

1. Whether the ALJ failed to give good reasons for rejecting the opinion of Lopez's treating physician; and

2. Whether the ALJ properly rejected the opinion of the state agency medical consultant in determining Lopez's functional capacity.

(Pl.'s Br. 1.)

## IV. ALJ DECISION

In his May 7, 2009 decision, the ALJ concluded that Lopez was not disabled within the meaning of the SSA. (Tr. 10–11.) In making his determination, the ALJ proceeded to follow the five-step sequential evaluation process. At the first step, the ALJ found that Lopez had not engaged in any substantial gainful activity since November 30, 2007—the date of Lopez's protective filing. (Tr. 11.) At the second step, the ALJ found that Lopez suffered from "bipolar disorder versus schizoaffective disorder" and a learning disorder and that such disorders were severe impairments under the SSA. (Tr. 11.) At the third step, the ALJ found that when Lopez was compliant with his prescribed medical treatment, his severe impairments did not meet or equal in severity to an impairment contained in the Listing. (Tr. 15.)

The ALJ then found that Lopez had "the residual functional capacity to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of work activity at all exertional levels," provided that the work did not entail working with the general public, entailed only superficial contact with coworkers and supervisors, and was limited to noncomplex work. (Tr. 17.) Next, at the fourth step, the ALJ found that Lopez had no past relevant work performed at the level of substantial gainful activity to which he could return. (Tr. 18.) Finally, at the fifth step, the ALJ opined that, based on Lopez's RFC and on his age, education, and work experience, Lopez retained the ability to perform unskilled work existing in significant numbers in the national economy and, thus, was not disabled and had not been disabled at any time through the date of the decision. (Tr. 18–19.)

## V. DISCUSSION

### A. Issue One: Did the ALJ fail to give good reasons for rejecting the opinion of Lopez's treating physician?

In his first issue, Lopez asserts that the ALJ did not adequately weigh the assessment of Lopez's treating physician, Dr. Karen Price ("Dr. Price"), that Lopez had marked to extreme limitations in six different areas of mental functioning and that Lopez would be unable to work a full eight-hour day. (Pl.'s Br. 4; Tr. 366–67.) In this way, Lopez appears to argue that the ALJ erred by finding that Lopez's severe impairments of "bipolar disorder versus schizoaffective disorder" and learning disorder were not disabling.

Substantial evidence supports the ALJ's decision to accord less weight to the treating physician's assessment. The Fifth Circuit has repeatedly held that a treating physician's opinion that a claimant is disabled is "far from conclusive" because the "ALJ has the sole responsibility for determining the claimant's disability status." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Further, the regulations implementing the SSA establish that a treating physician's opinion is accorded "controlling weight" only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is *not inconsistent with the other substantial evidence* in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2) (emphasis added). As such, the ALJ must analyze testimony "to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." *Greenspan*, 38 F.3d at 237.

In determining whether Lopez's impairments met the requirements of the Listing, the ALJ considered Dr. Price's opinion as well as other evidence. The ALJ found that Dr. Price's February 23, 2009 assessment—that Lopez had marked to extreme difficulties, could not work a full eight-hour day, and had been unable to do so since 2003—differed from both Dr. Price's

own notes and the other record evidence. (Tr. 14.) The ALJ noted that Dr. Price and other medical sources had consistently observed that when Lopez complied with his treatment, he had few to no symptoms and functional limitations of only mild to moderate severity. (Tr. 14, 194–96, 287–311.) Further, when Lopez was examined by Dr. Jadwiga Klymiuk ("Dr. Klymiuk") in December 2007, Dr. Klymiuk noted that Lopez had been sleeping well, was neat and alert, and showed a good thought process. (Tr. 176–82.) Ultimately, the ALJ found Dr. Price's opinion "completely inconsistent with the objective clinical evidence, including this doctor's own treatment records, depicting the claimant as being completely functional during periods of medical compliance." (Tr. 14.) Because the overall medical record contradicted Dr. Price's assessment that Lopez had severe functional inhibitions, the ALJ accorded Dr. Price's testimony less weight when making his disability determination. (Tr. 15.)

Despite the inconsistencies with the overall medical record, Lopez contends that the ALJ improperly weighed Dr. Price's assessment of Lopez's functional limitations because Dr. Price's assessment is supported by Lopez's subjective complaints made during the hearing of not sleeping, being "out of it," and being too tired to work when taking his medication. (Pl.'s Br. 4.) Lopez argues that the ALJ should have weighed such complaints more heavily. However, Lopez's hearing statements contradict the statements he made during his periodic medical evaluations at MHMR. When asked how he was doing, Lopez reported on multiple occasions to both the MHMR nurses and Dr. Price that he was feeling better and doing well. (Tr. 292, 295, 299.) When asked how he felt about his need for treatment in April 2008, Lopez reported that he needed to "keep getting [his] medication" and "keep taking it . . . love it . . . I need it . . . keep a healthy body. . . . " (Tr. 266) (ellipses in original). Due to the inconsistencies in Lopez's testimony at the hearing and his statements during his MHMR visits, the ALJ could have determined that the subjective complaints were not credible. *See Johnson v. Heckler*, 767 F.2d

180, 182 (5th Cir. 1985) (noting that "while an ALJ must consider an applicant's subjective complaints . . . , he is permitted to examine objective medical evidence in testing the applicant's credibility").

Lopez further argues that the ALJ failed to apply Social Security Ruling ("SSR") 82-59 when he implicitly found that Lopez had been noncompliant with his prescribed medical treatment. (Pl.'s Br. 5.) SSR 82-59 provides that when a claimant fails to follow prescribed treatment that can be expected to restore his ability to work, the ALJ must develop the record to resolve whether the claimant is justifiably failing to undergo the prescribed treatment. SSR 82-59, 1982 WL 31384, at *1–2 (effective August 20, 1980). The SSR states that the claimant should be given an opportunity to fully express the specific reasons for not following prescribed treatment. *Id.* at *2. In addition, SSR 82-59 requires that the claimant be made aware that his answers will be used in deciding his claim and that continued failure to follow prescribed treatment without good reason can result in a denial of benefits. *Id.*

Throughout his decision, the ALJ made numerous references as to the issue of Lopez's level of compliance with his treatment regimen. The ALJ wrote, "The claimant acknowledged that he sometimes misses appointments at the MHMR and that he is not always compliant with treatment, but he also admitted that he is all right when he is on his prescribed medication." (Tr. 16.) When evaluating Dr. Price's medical opinion, the ALJ found Dr. Price's opinion of the severity of Lopez's condition inconsistent with the objective medical evidence, including Dr. Price's own notes "depicting the claimant as being completely functional during periods of medical compliance." (Tr. 14.) The ALJ further noted that Dr. Price consistently found that Lopez had no significant symptoms when he complied with his medication. (Tr. 14.) In deciding whether Lopez's impairments met the Listing, the ALJ wrote,

> I find that the objective medical evidence fails to establish that the claimant suffers from any impairment or combination of impairments which meet or equal in severity the requirements of any provision contained in the Listing of Impairments *when he is compliant with his prescribed psychotropic medication.* . . . I specifically conclude that, *when he is not compliant with his prescribed medication*, the claimant's diagnosed learning disorder and schizoaffective disorder versus bipolar disorder result in moderate sustained limitations in his daily activities, marked sustained limitations in his social functioning, concentration, persistence and pace, 1–2 prolonged episodes of decompensation, no "marginal adjustment" and no need for a highly supportive living arrangement under the provisions of §§ 12.02, 12.03, and/or 12.04, respectively, of the Listing.
>
> By contrast, however, I further specifically find that, *when the claimant is compliant with his prescribed medical treatment*, his diagnosed learning disorder and schizoaffective disorder versus bipolar disorder cause no more than mild sustained limitations in his daily activities, moderate sustained limitations in his social functioning, concentration, persistence and pace, no prolonged episodes of decompensation, no "marginal adjustment" and no need for a highly supportive living arrangement under the provisions of §§ 12.02, 12.03, and/or 12.04, respectively, of the Listing. Thus, *with medical compliance*, the claimant has no Listing-level impairment.

(Tr. 15) (emphasis added). Additionally, when the ALJ assessed Lopez's RFC, the ALJ made his determination based on Lopez's abilities "when he is compliant with prescribed treatment." (Tr. 17–18.) Accordingly, Lopez argues that the ALJ implicitly denied Lopez SSI benefits based on his noncompliance with his treatment without first following the mandates of SSR 82-59. (Pl.'s Br. 5.)

Lopez supports his contentions with *Alexander v. Astrue*, No. 07-477, 2008 WL 918527 (W.D. La. Mar. 31, 2008). In *Alexander*, the ALJ stated, consistent with Fifth Circuit case law, "If an individual does not follow treatment without a good reason, they will not be found to be disabled." *Id.* at *5 (citing *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988)). The record revealed that Alexander had not been compliant with her medications. *Id.* at *5. The ALJ stated that he believed Alexander's condition would improve with medication. *Id.* While the ALJ did not expressly state that this fact provided the basis for his conclusion that Alexander's impairment did not meet the Listing, *id.*, he ultimately found her not disabled at step four

8

because she could return to her past relevant work, *id.* at *1. The district court inferred from the ALJ's reasoning that the ALJ had based his finding of nondisability upon the claimant's lack of compliance. *Id.* at *5. Citing to other district courts in the Fifth Circuit, the district court determined that the ALJ erred when he did not provide Alexander with an opportunity to explain her reasons for noncompliance as mandated by SSR 82-59. *Id.*

Lopez's case is distinguishable from *Alexander*, however, because the ALJ here did provide Lopez with an opportunity to explain his noncompliance with medical treatment. The ALJ in this case expressly questioned Lopez regarding his noncompliance during the hearing, which allowed Lopez the opportunity to justify his noncompliance. The ALJ asked Lopez about missing his MHMR appointments as follows:

> Q. Now, I've looked at your records for MHMR and it shows to me that you've missed almost as many appointments as you go to and that you run out of medicine an awful lot of times. Isn't that true?
> A. Yes.
> Q. Well, why do you miss all of these appointments?
> A. I tend to not sleep some days and when I do sleep, I get like kind of out of it. When I don't sleep, I'm out of it. But those are the days I miss my appointments when I'm too lazy.
> Q. When you're too what?
> A. Lazy, lazy.
> Q. You're too lazy?
> A. Yes.

(Tr. 28–29.) The ALJ continued by asking Lopez about the reasons why he would "run out of medicine an awful lot of times":

> Q: Well what about --
> A: My mind is tired.
> Q. -- what about missing all the medication?
> A: I have my father pick it up for me.
> Q: And?
> A: He comes back home and he gives it to me and I go upstairs as soon as I get the chance.
> Q: A lot of [MHMR] records show you just keep running out of medicine and what you should do is if, if you're going to run out, you call them right?

9

> A: Yes, I do call.
> Q: Well, then, how come you run out so often?
> A: I call when I miss my appointment.

(Tr. 29.) SSR 82-59 requires that the ALJ solicit specific reasons from the claimant regarding noncompliance in order to develop the record regarding failure to follow prescribed treatment. 1982 WL 31384, at *2. The ALJ expressly solicited such responses, and the record shows that Lopez's only apparent justification for noncompliance is being "out of it" due to lack of sleep and being "lazy" (Tr. 28–29), which the ALJ could have determined not to be an acceptable excuse. *See* SSR 82-59, 1982 WL 31384, at *5 (stating that the SSA, after evaluating the evidence in the file, may decide that the claimant does not have a good reason for failing to follow prescribed treatment).

In essence, Lopez's argument hinges on the ALJ's alleged failure to follow the notice procedure of SSR 82-59—that is, the ALJ did not explicitly inform Lopez that he could be found not disabled based on his failure to comply with treatment. The Fifth Circuit has held that "procedural improprieties . . . will therefore constitute a basis for remand *only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision.*" *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (emphasis added). If the ALJ makes a procedural error, the duty of the court is to determine whether that error is harmless. *See id.* Here, Lopez was given the chance to justify his noncompliance, but the ALJ found his excuses meritless.

On appeal, Lopez asserts that he failed to comply with his medication regimen due to its side effects of fatigue and weight gain. He claims that his medication makes him tired and points to his hearing testimony about being too "out of it" and "lazy" to go to his appointments. (Pl.'s Br. 4.) However, Lopez made no such complaints during his visits to MHMR. When asked how he was doing on his medication, Lopez reported that he loved his medication and that he was

doing well. (Tr. 266, 292, 295, 299.) Lopez also points to his weight gain of twenty-two pounds from April 2008 to January 2009 as proof of the side effects from taking the medication and as support for his own statements of being tired. (Pl.'s Br. 4.) However, Lopez did not testify at the hearing that weight gain was a reason for failing to take his medication, and he does not point to any significant medical evidence in the record regarding the weight gain or its effect on his functional abilities.

Other courts that have remanded cases based on SSR 82-59 errors have done so because, unlike Lopez, those claimants were not afforded any opportunity to justify their noncompliance. *See Lindsey v. Astrue*, No. 3:09–CV–1649, 2011 WL 817173, at *10 (N.D. Tex. Mar. 9, 2011) (remanding for the ALJ to develop whether the claimant had a justifiable excuse for noncompliance); *Burns v. Astrue*, No. 5:07-CV-182-C, 2008 WL 2191303, at *5 (N.D. Tex. May 27, 2008) (same); *Alcorta v. Bernard*, No. SA-02-CA-0472-OG, 2006 WL 3827003, at *11 (W.D. Tex. Dec. 28, 2006) (finding that the record was devoid of any questioning concerning the claimant's reasons for noncompliance). In *Alexander*, the case relied on by Lopez, the record revealed two potential justifications for the claimant's noncompliance: (1) the claimant's inability to afford her medication and (2) the potential that the claimant's noncompliance was the result of her mental impairment. 2008 WL 918527, at *6. No such evidence appears in the record of this case. *Compare, e.g., Burns*, 2008 WL 2191303, at *5 (observing that the claimant's mental illness may have contributed to her noncompliance due to her claims that she was experiencing hallucinations and she had to stop taking the medication "because she felt she was doing it for the girl or for the man").

Even assuming that the ALJ made a procedural error, to remand the case would be a useless procedure when the claimant's substantial rights have not been prejudiced. *Alexander v. Astrue*, 412 F. App'x 719, 722 (5th Cir. 2011) (explaining that affirmance is warranted when "no

11

realistic possibility" exists that, absent the error, the ALJ would have decided differently), *cert. denied*, 132 S. Ct. 259 (2011). Accordingly, the Court concludes that any error in connection with SSR 82-59 was harmless and that substantial evidence existed to support the ALJ's decision to accord less weight to the treating physician's opinion. *See Leggett*, 67 F.3d 558; *Hollis*, 837 F.2d 1378.

    **B.**    **Issue Two: Did the ALJ follow the proper legal standard when he rejected the testimony of the state agency medical consultant who assessed Lopez's functional capacity?**

In his second issue, Lopez contends that the ALJ failed to consider the RFC assessment conducted by the state agency medical consultant, Dr. Charles McDonald, in violation of SSR 96-6p. (Pl.'s Br. 6.) Dr. McDonald conducted a review of Lopez's records in February 2008 and submitted a Mental Residual Functional Capacity Assessment in which he noted that Lopez was markedly limited in his ability to understand and remember details and carry out detailed instructions. (Tr. 230.) While Dr. McDonald noted that Lopez was only moderately or not significantly limited by any other symptoms, he ultimately concluded that Lopez was "unable to sustain [the] concentration [and] pace necessary to complete a regular work schedule without interference from psychological/emotional symptoms." (Tr. 232.) Lopez argues that the ALJ erred by failing to consider this assessment and that, because it supports Dr. Price's opinion of Lopez's limitations, this was prejudicial error. (Pl.'s Br. 6–7.)

SSR 96-6p requires the ALJ "to consider and evaluate" the opinions of State medical and psychological consultants but also states that ALJs "are not bound by findings made by a State agency or other program physicians and psychologists." SSR 96-6p, 61 Fed. Reg. 34,466, 34,467 (July 2, 1996). ALJs "may not ignore these opinions and must explain the weight given to the opinions in their decisions." *Id.* The ALJ acknowledged Dr. McDonald's RFC assessment but did not use it as a basis for his decision because Dr. McDonald had issued his opinion

without the benefit of Lopez's entire record. (Tr. 18.) Ultimately, the ALJ decided that Lopez had the RFC "to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of work activity at all levels," provided that the work did not entail working with the general public, entailed only superficial contact with coworkers and supervisors, and was limited to noncomplex work. (Tr. 17.)

Substantial evidence supports the ALJ's evaluation of Dr. McDonald's opinion. After reviewing the overall record, the ALJ found Dr. McDonald's assessment inconsistent with the medical record and, thus, worthy of less deference and weight. (Tr. 18.) SSR 96-6p expressly provides that "the opinions of State agency medical and psychological consultants and other program physicians and psychologists *can be given weight only insofar as they are supported by evidence in the case record.*" 61 Fed. Reg. at 34,467 (emphasis added). In determining whether the opinion is supported, the ALJ must consider evidence received at the ALJ level that was not before the State agency. *Id.* The more consistent an opinion is with the overall record, the more weight the ALJ gives to that opinion. *See* 20 C.F.R. § 416.927(c)(4).

Dr. McDonald made his assessment in February 2008. After that date, Lopez's medical records indicate that he displayed mild to no symptoms. (Tr. 247, 292–97.) When the Cooperative Disability Investigation Unit investigated Lopez in May 2008, his neighbors expressed that Lopez was often seen exercising outdoors, which contradicted his mother's testimony that he never ran or jogged. (Tr. 252.) When the unit interviewed Lopez, he was able to recall and recite his social security number, his birth date, his birth location and hospital, and his last place of employment in detail—which contradicts Dr. McDonald's assessment that Lopez had difficulty remembering details. (Tr. 254.) Lopez even refuted many of his previous statements of having children with celebrities and stated, "I'm fine as long as I'm on my medication." (Tr. 254.) Under the law of this circuit, "[i]f an impairment reasonably can be

13

remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability." *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988). Further, even Dr. McDonald ultimately conceded that if Lopez complied with his medication, he would be able to sustain "some level of employment." (Tr. 228.)

The Court concludes that there is substantial evidence to support the ALJ's finding that the record contradicted the conclusions in Dr. McDonald's RFC assessment. The Fifth Circuit has expressly stated that the ALJ may freely reject the opinion of any physician when the evidence supports a contrary decision. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). Accordingly, because the ALJ provided a reasonable explanation for giving little weight to Dr. McDonald's opinion as required by SSR 96-6p, the ALJ did not err by rejecting Dr. McDonald's RFC assessment. *See id.*

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal

conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until June 5, 2012, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED May 22, 2012.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE